# UNITED STATES DISTRICT COURT

for the

District of    Western North Carolina

Division    Charlotte

FILED
CHARLOTTE, NC

OCT 2 4 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| Sandra Renee Blount | ) Case No.   3:25-cv-846-KDB |
| _____ | )    *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
| | ) |
| Wells Fargo Bank, NA | ) |
| _____ | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Sandra Renee Blount |
| Street Address | 14432 Tribute Place Drive, Apt 303 |
| City and County | Huntersville   Mecklenburg County |
| State and Zip Code | North Carolina   28078 |
| Telephone Number | 704-288-9085 |
| E-mail Address | sndrblount@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name                  Wells Fargo Bank, NA

    Job or Title *(if known)*      CIC BLDG

    Street Address         1525 W. WT HARRIS BLVD

    City and County        CHARLOTTE  MECKLENBURG COUNTY

    State and Zip Code    NORTH CAROLINA    28262

    Telephone Number    877-479-3557

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

C.    **Place of Employment**

    The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | WELLS FARGO BANK, NA (CIC BUILDING) |
| Street Address | 1525 W WT HARRIS BLVD |
| City and County | CHARLOTTE   MECKLENBURG COUNTY |
| State and Zip Code | NORTH CAROLINA 28262 |
| Telephone Number | 877-479-3557 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*: _____

☐ Relevant state law *(specify, if known)*: _____

☐ Relevant city or county law *(specify, if known)*: _____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☑ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts (specify): Mary McFadden weaponizing Manager's check-in

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s)

May 8, 2024 (Todd Hale) to July 31, 2025

C.  I believe that defendant(s) (check one):

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my (check all that apply and explain):

- ☑ race _____
- ☑ color _____
- ☑ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☑ age (year of birth) 1968 (only when asserting a claim of age discrimination.)
- ☑ disability or perceived disability (specify disability)

Made Mary McFadden aware on Nov. 12, 2024 of severe depression.

E.  The facts of my case are as follows. Attach additional pages if needed.

Please read attached pages.

(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)

## IV. Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

June 18, 2025

B.      The Equal Employment Opportunity Commission *(check one)*:

☐      has not issued a Notice of Right to Sue letter.

☑      issued a Notice of Right to Sue letter, which I received on *(date)* _____ .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑      60 days or more have elapsed.

☐      less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Please read the attached page.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.      **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   *October 24, 2025*

Signature of Plaintiff   *Sandra Renee Blount*
Printed Name of Plaintiff   *Sandra Renee Blount*

B.      **For Attorneys**

Date of signing:   _____

Signature of Attorney          _____
Printed Name of Attorney     _____
Bar Number                         _____
Name of Law Firm               _____
Street Address                     _____
State and Zip Code               _____
Telephone Number               _____
E-mail Address                    _____

**Sandra Renee Blount**

**v.**

**Wells Fargo Bank, NA**

**Response to Section III for "E" of the Complaint for Employment Discrimination**

**FACTS OF THE CASE**

### 1. Parties Involved

- **Plaintiff:** Sandra Renee Blount

- **Defendant:** Wells Fargo Bank, NA

- **Direct Manager:** Mary McFadden – VP, Due Diligence Manager

- **Mary's Manager:** Todd Hale – Senior Due Diligence Manager, Executive Director

- **Todd's Manager:** Ivan Williams – Due Diligence Director, Executive Director

### 2. Employment Background

I was employed by Wells Fargo Bank, NA from November 7, 2016, until my termination on July 31, 2025—a period of approximately 8 years and 8 months. My most recent position was Due Diligence Consultant – Front Line Monitoring, where I reviewed and investigated banking alerts for Commercial, Corporate, and Investing Banking platforms. Alerts included Cash Vault Outlier (CVO) by business location and Actual vs Accepted (AVA) by state location.

### 3. Performance and Recognition

While I occasionally faced challenges meeting quotas or quality assurance standards, I consistently responded to coaching with professionalism and improvement. My long tenure, promotions, and compensation increases reflect my adaptability and commitment to excellence. I served as a trainer in every department I worked in, helping onboard and support new employees. In November 2022, I received a manager's recognition award for my contributions. In the summer of 2024, while working in Front Line Monitoring (FLM), I became the first in my peer group to complete CVO (Customer Verification Operations) certification demonstrating initiative and mastery of new responsibilities.

During my time in FLM, I delivered presentations to global teams, including both on-shore and

off-shore colleagues. On February 14, 2025, I was awarded a $7,500 performance bonus for my work throughout 2024. In addition to the bonus, I received a pay raise and a highly positive year-end review from Mary McFadden **(Exhibit A attached)**. These acknowledgments reflect my consistent commitment to excellence and directly contradict any suggestion that my termination was performance-related and professionalism.

### 4. Retaliation and Pattern of Behavior

On May 8, 2024, Todd Hale publicly reprimanded me on the floor, loudly stating that I should not go to a team member's desk. His comment, made in front of the entire team, left me humiliated. In June 2024, I emailed Mary McFadden to express my discomfort with the incident. Rather than offer support, she criticized my communication style and later documented the exchange in a "Manager's Check-In," reframing my concern as a communication issue, as noted in the June 28, 2024 entry **(Exhibit B attached)**. That same day, during a one-on-one Teams meeting, Mary referred to me as a "child in time-out." This comment reflects a broader pattern of demeaning language used to undermine and belittle me in conversation. By July 2, 2024, she came back with a better Manager's Check-In, since I made no more complaints. I had learned my lesson by then. **(Exhibit C attached)**

After the March 4, 2025 "Manager's Check-In" **(Exhibit D attached)** setup by Todd Hale and Mary McFadden, which mischaracterized me as a distraction rather than addressing the real issue of favoritism toward younger team members, I asked Ivan Williams if someone could sit in on my one-on-one meetings with Mary. I made this request because Mary had a pattern of misrepresenting what occurred in meetings, and I wanted a witness present. Ivan decided that Todd Hale would join the meetings going forward. However, Todd was of no help. He remained silent during the few one-on-one meetings that actually took place over Microsoft Teams. There was no leadership or intervention from Todd; Mary continued to dominate the meetings and control the narrative. Todd was complicit.

At no time was I informed that my AVA performance was inadequate or under review. Even while on a leave of absence from March 12 to April 10, 2025, I consistently achieved weekly Quality Control (QC) scores between 98% and 100%. The only deviation occurred during September and October 2024, when my scores temporarily declined due to a period of severe depression. By November 12, 2024, I was out on a leave of absence, returning on December 10, 2024. These facts directly contradict the narrative used to justify my termination and suggest that the concerns cited in the EEOC Respondent Position Statement **(Exhibit E attached)** were not genuinely addressed during my employment.

From my reading of the Respondent's Position Statement, it is clear that the intent is to tear me down rather than present a fair account. Wells Fargo Bank, as a collective, appears more focused

on protecting its internal network of managers than addressing the cruel retaliation inflicted on older Black female employees. The company's response reflects a disturbing reliance on harmful stereotypes portraying Black women as hostile or foul to justify exclusion and termination. This tactic is not only discriminatory, it reinforces a culture of bias and silencing that contradicts the inclusive values Wells Fargo claims to uphold. **(Please read Exhibit F: My EEOC Rebuttal)**

## 5. Hostile Environment and Double Standards

Prior to my termination, Mary McFadden and I had a working relationship that, on the surface, appeared collegial—even friendly. In December 2024, two team members and I gave Mary a $65 Dunkin' Donuts gift card as a holiday gesture, reciprocating a gift she had given to the team. In early 2025, we continued to exchange lighthearted messages, including a humorous text on January 28, 2025, in which I used the word "damn" to describe a handsome manager seated beside me. Mary responded with "Lmbo" and six laughing emojis, showing no concern or objection at the time. These messages reflect a cordial and respectful rapport. I never took advantage of her position as my manager, nor did I ever speak to her in a disrespectful manner. Her sudden and severe shift in behavior especially beginning March 4, 2025 feels like a profound betrayal during an already painful and stressful period.

Mary had planned and took a vacation to Italy for the entire month of February 2025, returning around February 26. Yet, in the weeks leading up to her departure, she remained highly engaged with me. The week prior before starting her vacation on February 4, 2025 she told me about a $500 purse she intended to buy while in Italy. She also advised me to stop my 401(k) withdrawals so I could receive the full amount of my performance bonus, which was awarded on February 14, 2025. Additionally, she strongly encouraged me to present an "interesting case" to the team on February 25, 2025—despite knowing she would be out of office and I was uncomfortable with presenting. These interactions suggest a level of trust and rapport that contradicts the narrative later used to justify my termination.

Before Mary's Italy trip, we would greet each other with hugs when we saw one another in person. These gestures, combined with her informal tone and proactive support, reflect a relationship that was not only professional but personally cordial. It is therefore deeply troubling and telling that after I raised concerns about favoritism and age discrimination on February 26–27, 2025 in emails to Todd Hale **(Exhibit G: all emails on those dates)** the tone of our relationship shifted dramatically. Mary began weaponizing the internal Wells Fargo "Manager Check-In" system to discredit me and build a false narrative. Her selective enforcement of standards and dismissive behavior reflect a pattern of retaliation and targeted hostility that escalated after I engaged in protected activity.

It is also very noticeable to me that whenever I brought concerns to Mary—as far back as June 2024—she weaponized the Manager's Check-In system to keep me in line. After the July 2,

2024, Manager's Check-In, we began having weekly one-on-one meetings every Friday for the remainder of the year. I did not receive another write-up during that time. I had learned that raising your hand to express concerns with Todd and Mary meant risking a tarnish on your record. Their use of internal documentation to suppress dissent and control narrative was strategic and retaliatory.

## 6. Contrasting Leadership Styles

Years earlier, in another Wells Fargo department, I reported favoritism involving a colleague who had misled a manager about job eligibility. HR encouraged me to speak directly with the department head, who acknowledged my concern and committed to enforcing policy. He invited me into a private meeting that lasted approximately 45 minutes, during which he calmly addressed my concerns and reassured me that my voice was heard. I had no fear that he would misrepresent our conversation or retaliate against me—unlike Mary McFadden, who later distorted our March 4, 2025, meeting in a "Manager's Check-In" to discredit me.

After I met the eligibility requirement, that same department head gifted me a Money Tree plant in appreciation—a gesture that reflected respect and validation. This experience stands in stark contrast to the behavior of Mary McFadden and Todd Hale, who avoided accountability and retaliated when I raised legitimate concerns. Their actions demonstrate a leadership style rooted not in fairness or transparency, but in control, deflection, and selective enforcement.

## 7. Termination and Escalation

On July 31, 2025, I was terminated by Ivan Williams, who said I "had a bad attitude." One day earlier, Mary conducted my Mid-year Review, stating my "tone and communication style did not align with expectations of professionalism." **(Exhibit H)** On July 25, 2025, HR (Suzie Owens) told me they could not identify any policy violation by Mary. This confirmed a pattern: HR consistently dismissed my concerns. I escalated my complaint to senior leadership, including the CEO of Wells Fargo.

## 8. Final Statement

In the months leading up to my termination, Mary McFadden, Todd Hale, and Ivan Williams retaliated against me by removing responsibilities such as AVA, which I had performed successfully. After I raised concerns about favoritism and age discrimination on February 26–27, 2025, I was labeled "difficult" and sidelined, despite strong performance metrics. This reflects a broader pattern at Wells Fargo: when Black women speak up, they are met with smear tactics and exclusion.

By July 25, 2025, I had to ask a senior team member for work because my duties had been reassigned to a younger colleague, who was given seven projects while I was given only one and I was only the back-up for the younger colleague on that specific job. This disparity was deliberate and retaliatory. I also reported a sudden shift in Mary's behavior to HR—our previously cordial relationship deteriorated just days after I emailed her boss about being sidelined.

I believe Mary, Todd, and Ivan were buying time to justify firing me. Their claim in the EEOC Respondent response that I made threats is categorically false. "Tone and communication style" in my Mid-year Review is code for "stop emailing higher management about problems with her, Todd, and Ivan". I did all of those emails because Employee Relations and Human Resources were doing nothing at all to help me. Every review they always sided with the liar, Mary McFadden.

I am requesting a jury trial so the truth can be heard and those responsible held accountable. The Respondent's Position Statement falsely accuses me of "multiple instances of threatening and inappropriate conduct." If that were true, it would have appeared in my 2024 year-end review and the Mid-year Review given on July 30, 2025, which it did not. The timing of these accusations, following my protected activity, is retaliatory. I have the right to say I will get an attorney. I have right to go above Ivan Williams, since he was incompetent to address this discrimination and favoritism. At every turn to raise my hand, HR would say they could find nothing that Mary McFadden did wrong.

Meanwhile, I have witnessed far more serious misconduct at Wells Fargo—such as managers engaging in sexual relationships with their direct reports—without consequence. I have documented evidence of one such case involving a manager and a subordinate, and the situation was not hearsay. These relationships often appear to influence promotions and favoritism, particularly among individuals pursuing six-figure roles. Yet when a Black woman raises legitimate concerns, she is labeled as a threat and pushed out. This double standard is not only unethical—it is discriminatory.

Todd Hale failed to address my concerns about age discrimination and deliberately avoided me, refusing to speak to me again after the orchestrated one-on-one meeting he and Mary McFadden arranged to corner me on March 4, 2025.

Mary McFadden's harsh tone was documented by white colleagues in Minnesota and Texas, one of whom was brought to tears. HR complaints named all three leaders, Mary, Todd, and Ivan, but leadership ignored the pattern. Ivan Williams, who handpicked Mary and Todd, failed to intervene or correct their bias against me.

I asked Ivan Williams if I could transfer to another team to escape the hostile environment created by Mary McFadden. He falsely claimed that no such option was available, despite my

clear request for relief. I was seeking a way to continue contributing without being subjected to Mary's retaliatory behavior.

It is my belief that Wells Fargo targets employees like me, a heterosexual Black woman, while protecting others who fit favored profiles, including those who identify as gay or lesbian. Based on my observations, had I identified differently, I do not believe Mary McFadden and Todd Hale would have treated me with such hostility. In a one-on-one meeting in October 2024, Mary explicitly stated, "You can't say anything against them," referring to gay and lesbian employees, and added that "Wells Fargo does not play that." Mary could came into the March 4, 2025 meeting with me and said, "I don't understand" over 10 times to create a hostile conversation to where I could not get my explanation out to her for leaving a meeting five minutes early nor explain my suspicions of a relationship between two team members. **(Exhibit I: My response to Manager's Check-In March 4, 2025.)**

Mary then turned around and lied in the Formal Warning Corrective Action **(Exhibit J attached)** for firing on April 16, 2025 and said that I told her in the March 4, 2025 one-on-one meeting that two colleagues were "fucking" and what I really said what she alluded to in the March 4, 2025 Manager's Check-In is more correct. I said, "On my prior job years ago that married men would always come in and try to find a work-wife to "fuck". Mary knows that the same thing goes on in Wells Fargo Bank. Also, after I returned to office on April 10, 2025, I had not even had any communication with Mary, so how did she jump to a Corrective Action for firing so quickly. HR would never answer nor address that question in their internal review.

This comment underscores a culture of selective protection, where certain employees are shielded from scrutiny while others are marginalized or pushed out. The disparity reflects a broader pattern of bias and unequal treatment that contradicts the inclusive image Wells Fargo publicly promotes. Todd Hale, known for using profanity openly, never faced correction for his language. It raises the question: why was Mary McFadden so offended by my use of the word "fuck"? Was it because I had touched on the truth of her biases, favoritism, and discriminatory behavior? In our conversations, Mary expressed negative opinions even about white women on the combined teams in Texas and Minnesota—further revealing a pattern of exclusion and hostility that extended beyond race and into personal bias.

I am not just seeking justice for myself—I am standing up for every employee who has been silenced or retaliated against for speaking the truth. The relief I am requesting is essential to rebuild my life and to hold Wells Fargo accountable for the damage they caused.

**Other Exhibits:**

Exhibit K – text dated November 12, 2024 - My depression text to Mary McFadden

Exhibit L – text dated December 23, 2024 - Showing Mary some new shoes. We talked about

clothing sales all the time.

Exhibit M - dated January 28, 2025 – Joking text that shows how Mary and I would always laugh with each other.

Exhibit N – Email from Monica Litchen dated Jul 25, 2025, who reports to Todd Hale. I had asked her for work and she gave it to me. Mary, Todd and Ivan could have cared less if I had any work to do.

**Section 5 – Relief Requested**

I am seeking monetary relief in the amount of **$500,000** in a formal complaint against Wells Fargo for the financial, emotional, and professional harm caused by their discriminatory and retaliatory actions.

**Actual damages** include:

- **Lost wages and benefits** since my termination on **July 31, 2025**, totaling **$26,000**, based on my biweekly salary of $2,569.24.

- **Lost vacation pay**, totaling **$7,450.68**, based on 29 unused vacation days at a daily rate of $256.92.

- **Lost advancement and promotion opportunities**, estimated at **$150,000**, based on my career trajectory and expected salary increases over the next several years.

**Punitive damages** of **$240,000** are requested due to the retaliatory nature of the termination, the slanderous claims made in the Respondent's Position Statement, and the failure of leadership to address known patterns of bias and misconduct. These actions were not isolated—they reflect a continuing pattern of discrimination and retaliation against older Black women, which remains uncorrected at the time of this filing.

The total amount of relief requested is **$500,000**, which reflects the cumulative impact of lost income, reputational harm, emotional distress, and the ongoing difficulty of securing comparable employment due to the false narrative placed on my record.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Charlotte District Office**
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/18/2025

**To:** Miss Sandra R. Blount
14432 Tribute Place Drive, Apt 303
HUNTERSVILLE, NC 28078

Charge No: 430-2025-02663

EEOC Representative and email:    JAMILAH MARTIN
INVESTIGATOR
JAMILAH.MARTIN@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 430-2025-02663.

On behalf of the Commission,

# Jamilah Martin

Digitally signed by Jamilah Martin
Date: 2025.09.18 12:57:05 -04'00'

For Elizabeth "Betsy" Rader
District Director

**Cc:**
NC-CIC-WELLS FARGO
1525 W W T HARRIS BLVD
CHARLOTTE, NC 28262

Jill Davis
90 S 7TH ST FL 17
Minneapolis, MN 55402

Please retain this Notice for your records.